Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC
P.O. Box 7051
Missoula, MT 59807-7051
406-721-1435
tim@bechtoldlaw.net

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| FOREST SERVICE EMPLOYEES FOR ENVIRONMENTAL ETHICS, | ) ) ) ) | Cause No. |
| Plaintiff, | ) ) | |
| vs. | ) ) | COMPLAINT |
| UNITED STATES FOREST SERVICE, | ) ) ) ) | |
| Defendant. | ) ) ) | |

## **INTRODUCTION**

1.      In this Complaint Plaintiff Forest Service Employees for

Environmental Ethics (FSEEE) challenges the actions of Defendant United States

Forest Service on the agency's discharge of aerial fire retardant into navigable

waters of the United States in violation of the Clean Water Act.

2.      As more fully set forth below, FSEEE alleges here that the actions of

the Forest Service in this matter are arbitrary and capricious, an abuse of

discretion, or otherwise not in accordance with law under the Clean Water Act

(CWA), Section 505, 33 U.S.C. §1365. FSEEE seeks declaratory and injunctive

relief to mitigate, redress, or avoid irreparable injury to the environment and

FSEEE's interests under the law.

3.     If FSEEE prevails, FSEEE will seek an award of costs and attorney

fees pursuant to the CWA and/or the Equal Access to Justice Act, 28 U.S.C. §

2412.


## JURISDICTION

4.     This action arises under the CWA, Section 505, 33 U.S.C. §1365 as

more fully set forth below.  This Court has jurisdiction under 28 U.S.C. § 1331

(federal question); 28 U.S.C. § 1361 (mandamus); 28 U.S.C. §§ 2201-02

(declaratory judgment and further relief).

5.     An actual, justiciable controversy exists between Plaintiff and

Defendant.  Plaintiff has exhausted any administrative remedies. This Court has the

authority to grant the relief requested.

## VENUE

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) and LR

3.2.  The Forest Service Northern Region headquarters is located in this Division.

The Forest Service regularly uses chemical fire retardant to fight wildfires on

national forests within this District. The chemical retardants used by wildland firefighting agencies are tested and approved by the United States Department of Agriculture's Missoula Technology and Development Center, located in this Division. The Forest Service also has a Fire Sciences Lab and Smokejumper Base in this Division. Plaintiff has members who reside in this Division, and who have been injured by the Forest Service actions and activities complained of in this Complaint. Moreover, the Forest Service has discharged aerial fire retardant into navigable waters in this Division without a National Pollution Discharge Elimination System (NPDES) permit.

## PARTIES

7.    Plaintiff Forest Service Employees for Environmental Ethics is a 501(c)(3) nonprofit organization founded in 1989, with its principal place of business in Eugene, Oregon. FSEEE is composed of thousands of concerned citizens, present, former, and retired Forest Service employees, and other government resource managers. FSEEE's mission is to forge a socially responsible value system for the Forest Service based on a land ethic that ensures ecologically and economically sustainable resource management. FSEEE believes that the land is a public trust, to be passed with reverence from generation to generation. FSEEE is a unique concept—a national organization of government employees holding the Forest Service accountable for responsible land stewardship.

8.      FSEEE's members use and enjoy the National Forest System for outdoor pursuits of every kind, including scientific research, boating, backpacking, birdwatching, camping, climbing, fishing, hunting, and sightseeing. In their pursuit of these activities, our members rely on clean water. Degradation of water quality from aerial retardant harms FSEEE's members' use and enjoyment of national forests, including the forests' fish, wildlife, plants, and waters. FSEEE's members intend to continue to use and enjoy these and other areas on the national forests frequently and on an ongoing basis in the future, including this year.

9.      The aesthetic, recreational, scientific, and religious interests of FSEEE's members have been and will be adversely affected and irreparably injured if the Forest Service continues to act and fails to act as alleged herein. These are actual, concrete injuries caused by the failure of the Forest Service to comply with mandatory duties under the CWA and other federal laws. The injuries would be redressed by the relief sought.

10.     FSEEE has exhausted any available administrative remedies. Reviewable final agency action exists and is subject to this Court's review under Section 505(a), 33 U.S.C. §1365(a).

11.     Defendant United States Forest Service is an agency of the United States Department of Agriculture, and is responsible for the lawful management of our national forests.

## BACKGROUND

12.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a point source to waters of the United States except in compliance with, among other conditions, a NPDES permit issued pursuant to §402 of the CWA, 33 U.S.C. §1342.

13.     Fire retardant is a pollutant.

14.     Aircraft are point sources.

15.     The U.S. Forest Service and its contractors have discharged and continue to discharge retardant from aircraft into navigable waters without an NPDES permit.

16.     Between 2012 and 2019, the Forest Service discharged retardant pollutant on at least 459 occasions, totaling 761,282.5 gallons, from aircraft directly into national forest navigable waters.

17.     The Forest Service asserts that a June 23, 2011, letter from EPA excuses its failure to obtain a NPDES permit.

18.     However, the factual basis for the letter – "operators [] are not discharging into waters of the US" – is simply not true. *See* EPA letter of June 23, 2011.

19.     The Forest Service acknowledges hundreds of retardant discharges into waterways from misapplications and allowable exceptions.

20.     An EPA opinion cannot amend the Clean Water Act, which requires a NPDES permit for the discharge of fire retardant from aircraft into waterways.

21.     The Forest Service's discharges of retardant pollutants into waterways from aircraft point sources is continuous, on-going, and unpermitted, in violation of the Clean Water Act.

22.     In compliance with CWA Section 505(a), 33 U.S.C. §1365(a), on June 23, 2022, FSEEE sent a 60-Day Notice of Intent to Sue for violation of the CWA to the EPA Administrator, the relevant Regional Administrators of the EPA, the states in which the violations are occurring, and to the Chief of the Forest Service, the alleged violator.

23.     Sixty days have passed since the notice was served, and the violations complained of in the notice letter are continuing at this time.

## CLAIMS FOR RELIEF

### COUNT 1

24.     Section 301(a) of the CWA, 33 U.S.C. §1311(a), prohibits the discharge of pollutants from a point source to waters of the United States except in compliance with, among other conditions, a NPDES permit issued pursuant to §402 of the CWA, 33 U.S.C. §1342.

25.    The Forest Service's discharges of retardant pollutants into waterways from aircraft point sources is continuous, on-going, and unpermitted, in violation of the CWA.

26.    The term "discharge of pollutants" means any addition of any pollutant to navigable waters from any point source. 33 U.S.C. §1362(12).

27.    The term "pollutant" means dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water. 33 U.S.C. §1362(6).

28.    Fire retardant is a pollutant. Aerially delivered fire retardant formulations currently in use are primarily inorganic fertilizers (ammonium phosphates) or other inorganic salts (magnesium chloride).

29.    The term "point source" means any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged. 33 U.S.C. §1362(14).

30.    Aircraft are point sources.

31.     The U.S. Forest Service and its contractors have discharged and continue to discharge retardant from aircraft into navigable waters.

32.     Aerial retardant drops are not allowed in waterways or buffers surrounding them or in avoidance areas that have been mapped for certain threatened, endangered, proposed, candidate or sensitive species. This national direction is mandatory and is implemented except in cases where human life or public safety is threatened and retardant use within avoidance areas could be reasonably expected to alleviate that threat.

33.     Despite that mandate, the USFS admits that between 2012 and 2019, on at least 459 occasions, it discharged retardant pollutant, totaling 761,282.5 gallons, from aircraft directly into national forest navigable waters.

34.     If fire retardant enters a waterway, direct effects include lethal and sublethal effects on aquatic species. These could include mortality of organisms, change in abundance and composition of aquatic communities, or adverse impacts to habitat.

35.     From 2012 to 2019 there were 138 intrusions into threatened or endangered species habitat that required consultation. As such, the expected rate of intrusions is assumed to be 17 per year.

36.     Retardant use is increasing, suggesting that more retardant will be discharged to navigable waters in the future:



37.     The Forest Service's "may affect" determination for 57 aquatic threatened and endangered species and its "likely to adversely affect" finding for an additional 32 aquatic species from retardant applications are further acknowledgements that the Forest Service regularly discharges aerial retardant pollution into waterways.

**WHEREFORE, Plaintiff Requests the Following Relief:**

A.     Declare that the Forest Service's continuous, on-going, and unpermitted discharges of retardant pollutants into waterways from aircraft point sources violate the CWA;

B.      Grant Plaintiff injunctive relief to compel the Forest Service to

comply with applicable environmental statutes, prevent irreparable

harm, and satisfy the public interest;

C.      Award Plaintiff its costs, expenses, expert witness fees, and

reasonable attorney fees under applicable law; and

D.      Grant Plaintiff such further relief as may be just, proper, and

equitable.


DATED this 11th day of October, 2022.

/s/ Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC


Attorney for FSEEE