Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC
P.O. Box 7051
Missoula, MT 59807-7051
406-721-1435
tim@bechtoldlaw.net

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| FOREST SERVICE EMPLOYEES FOR ENVIRONMENTAL ETHICS, | CV-22-168-M-DLC |
| Plaintiff, | PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| UNITED STATES FOREST SERVICE, | |
| Defendant. | |

**Introduction**

In 2003, Plaintiff Forest Service Employees for Environmental Ethics (FSEEE) sued the Forest Service for failing to conduct an NEPA analysis and failing to consult under §7 of the ESA for fire retardant use on our nation's national forests. This Court ruled that the agency needed to complete consultation and analyses for retardant use. *See FSEEE v. U.S. Forest Service*, 397 F.Supp.2d

1

1241 (D. Mont. 2005). *See also FSEEE v. U.S. Forest Service*, 530 F.Supp.2d 1126 (D. Mont. 2008). When the agency eventually conducted its investigation, FSEEE once again sued the agency over the adequacy of the investigation. This Court then ruled that the agency had to complete a more thorough NEPA process by December 31, 2011. *See FSEEE v. U.S. Forest Service*, 726 F.Supp.2d 1195 (D. Mont. 2010). The Forest Service eventually issued a Record of Decision on the Nationwide Aerial Application of Fire Retardant on National Forest System Land in December of 2011, selecting Alternative 3 of the FEIS. SUF Ex. 1; Ex. 2.

The Alternative 3 decision adopted by the Forest Service in the 2011 ROD included provisions that the agency would map out areas of preclusion around waterways where there would be no retardant drops and that there would be no retardant drops within 300 feet of waterways. *See, e.g.,* Ex. 1 at 21. As part of the preparation of the 2011 document, the U.S. Environmental Protection Agency sent a letter to the Forest Service on Jun 23, 2011, stating,

> The 2011 Forest Service Guidelines created a 300-foot buffer zone from fire retardant application on either side of any surface water. Pilots operating in compliance with these Guidelines would presumably not be discharging fire retardant into waters of the United States and therefore a Clean Water Act (CWA) National Pollutant Discharge Elimination System (NPDES) permit would not be required.

SUF Ex. 3. Apparently relying on this letter, the Forest Service did not seek or obtain an NPDES permit for the aerial application of fire retardant into navigable waters.

2

In May 2020, the Forest Service prepared a Supplemental Information Report that recommended preparation of a Supplemental EIS on the 2011 Nationwide Aerial Application of Fire Retardant on National Forest System Land FEIS "to analyze for changed assumptions and conditions, complete analysis of potential effects of retardant use on Regional Forester sensitive species, and establish procedures for analysis of new retardant formulations and chemicals." *See* SUF Ex. 4 at 1; Ex. 8.

The Supplemental EIS identified at least 459 occasions between 2012 and 2019 that the Forest Service discharged retardant pollutants, totaling 761,282.5 gallons, from aircraft directly into national forest navigable waters. *See* Ex. 4 at 75-86 (Appendix D); Ex. 6 at 24.

The Federal Water Pollution Control Act, or Clean Water Act ("the Act"), 33 U.S.C. § 1365(a)(1), allows a citizen to sue to enforce the Act's prohibition against discharging water pollutants without a National Pollutant Discharge Elimination System ("NPDES") permit. In this matter, Plaintiff FSEEE challenges the actions of the Forest Service's discharge of aerial fire retardant into navigable waters of the United States in violation of the Clean Water Act. *See* Dkt#1. In its Answer, Defendant United States Forest Service admits violations of the Clean Water Act as alleged in FSEEE's Complaint. *See* Dkt#5. FSEEE therefore asks this Court to enter judgment in favor of FSEEE, enjoin the Forest

Service from the use of chemical fire retardant unless and until it obtains a National Pollution Discharge Elimination System permit, and award FSEEE its fees and costs of suit.

**Argument**

    **1. The Clean Water Act**

Section 301(a) of the CWA prohibits the "discharge of any pollutant" from any "point source" into "navigable waters" unless the discharge complies with certain other sections of the CWA. *See* 33 U.S.C. §1311(a). One of those sections is section 402, which provides for the issuance of NPDES permits. 33 U.S.C. §1342. In nearly all cases, an NPDES permit is required before anyone may lawfully discharge a pollutant from a point source into the navigable waters of the United States. *See Arkansas v. Oklahoma,* 503 U.S. 91, 101-02 (1992). The Act defines "discharge of a pollutant" as "any addition of any pollutant to navigable waters from any point source," 33 U.S.C. §1362(12). The term "pollutant" means dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water. 33 U.S.C. §1362(6). A point source is defined as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container,

rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. §1362(14).

Aerially delivered fire retardant formulations currently in use are primarily inorganic fertilizers (ammonium phosphates) or other inorganic salts (magnesium chloride). SUF¶8. Fertilizer in waterways is a pollutant. *See, e.g., NRDC v. E.P.A.,* 526 F.3d 591, 597 (9th Cir. 2008)(quoting EPA document describing fertilizer as a pollutant in stormwater runoff because it "can be toxic to aquatic organisms and degrade water for drinking and water-contact recreation"). When it enters a waterway, fire retardant is a pollutant because it could have "lethal and sub-lethal effects on aquatic species," including "mortality of organisms, change in abundance and composition of aquatic communities, or adverse impact to habitat." SUF¶10. When an aircraft discharges retardant, the aircraft is a point source under the Act because it "conveys" the retardant to the waters of the United States. *See S. Florida Water Mgmt. Dist. V. Miccosukee Tribe of Indians*, 541 U.S. 95, 105 (2004)( "a point source need not be the original source of the pollutant; it need only convey the pollutant to 'navigable waters'").

Thus aircraft are point sources and retardant is a pollutant for purposes of the Act. The question for this Court, then, is whether the Forest Service has discharged retardant into navigable waters without a National Pollution Discharge Elimination System permit.

5

### 2. The Forest Service's Admissions

In its Answer, Dkt#5, the Forest Service admits the following:

¶6: "[T]he Forest Service admits that, in certain circumstances, the Forest Service has discharged aerial fire retardant into navigable waters in this Division without a National Pollution Discharge Elimination System permit."

¶12 & ¶24: "The Forest Service admits that Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), provides that '[e]xcept as in compliance with this section and sections 1312, 1316, 1317, 1328, 1342, and 1344 of this title, the discharge of any pollutant by any person shall be unlawful.'"

¶14 & ¶30: "[T]he Forest Service admits that in certain circumstances an aircraft can be a point source."

¶15 & ¶31: "The Forest Service admits that, in certain circumstances, the Forest Service and its cooperators have discharged, and may in the future discharge, fire retardant from aircraft into navigable waters without an NPDES permit."

¶20: "[T]he Forest Service admits that an EPA letter cannot amend the Clean Water Act."

¶26: "The Forest Service admits that 33 U.S.C. § 1362(12) provides in part that "[t]he term 'discharge of a pollutant' and the term 'discharge of pollutants' each means (A) any addition of any pollutant to navigable waters from any point source."

¶27: "The Forest Service admits that 33 U.S.C. § 1362(6) provides in part that "[t]he term 'pollutant' means dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water."

¶28: The Forest Service admits "Aerially delivered fire retardant formulations currently in use are primarily inorganic fertilizers (ammonium phosphates) or other inorganic salts (magnesium chloride)."

¶29: "The Forest Service admits that 33 U.S.C. § 1362(14) provides in part that "[t]he term 'point source' means any discernible, confined and discrete

conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged."

¶33: The Forest Service admits that Appendix D of the draft Supplemental Environmental Impact Statement "speaks for itself and is the best evidence of its contents." Appendix D is a list of fire retardant intrusions into navigable waters on National Forest System lands from 2012 through 2019.

¶34: "The Forest Service admits that if fire retardant enters a waterway, direct effects could include, in certain circumstances, lethal and sub-lethal effects on aquatic species. The Forest Service admits that these effects could include, in certain circumstances, mortality of organisms, change in abundance and composition of aquatic communities, or adverse impact to habitat."

3. **The Forest Service has discharged retardant into navigable waters of the United States without an NPDES permit, in violation of the Clean Water Act**

The Forest Service admits that it has discharged retardant into navigable waters without an NPDES permit. Dkt#5 ¶6. *See also* Ex. 3 at 75-86 (identifying specific instances of retardant intrusions into navigable waters on national forest lands). The Forest Service intends to continue to discharge pollutants into navigable waters without an NPDES permit. Dkt#5 ¶15. This failure to have an NPDES permit violates the Act, s*ee Arkansas v. Oklahoma,* 503 U.S. at 101-02, because an aircraft is a conveyance and retardant is a pollutant.

4. **Injunctive relief is necessary to prevent ongoing harm.**

The Forest Service admits that it intends to continue to discharge retardant into waterways without an NPDES permit. Dkt#5 ¶15 & ¶31. The Forest Service

admits that if fire retardant enters a waterway, direct effects include lethal and sublethal effects on aquatic species. These could include mortality of organisms, change in abundance and composition of aquatic communities, or adverse impacts to habitat. Dkt#5 ¶34. From 2012 to 2019, for example, there were 138 intrusions into threatened or endangered species habitat that required consultation for NOAA species, thus the expected rate of intrusions is assumed to be 17 per year. Ex. 7 at 103.

The evidence supporting an injunction from aerial application of retardant into navigable waters now is compelling. The directives in the 2011 FEIS preclude use of aerial application of retardant within 300 feet of waterways have turned out to be a charade. Despite these very clear directives, from 2012 through 2019 – the seven-year period after approval of the 2011 FEIS – the Forest Service dumped retardant into navigable waters 459 times. Ex. 3 at 75-86; Ex. 6 at 24. The Forest Service has demonstrated that it is incapable of following its own directives about avoiding waterways, therefore this Court must enjoin the Forest Service from aerial application of retardants into navigable waters unless and until it obtains an NPDES permit to do so.

**Conclusion**

The Clean Water Act requires a NPDES permit to add pollutants to navigable waters. Fire retardant is a pollutant. The Forest Service admits that it is dumping

8

retardant into navigable waters without an NPDES permit, and that the retardant is harmful to aquatic life and environments. The Forest Service has demonstrated that it is incapable of following its own directives about avoiding waterways, therefore this Court must enjoin the Forest Service from aerial application of retardants. This Court must find that the Forest Service is violating the Clean Water Act, and enjoin aerial application of retardants into navigable waters unless and until the Forest Service has a legal NPDES permit to do so.

DATED this 10th day of January, 2023.

/s/ Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC

Attorney for FSEEE