W. Adam Duerk
KNIGHT NICASTRO MACKAY, LLC
283 W. Front Street, Suite 203
Missoula, Montana 59802
Email: duerk@knightnicastro.com
Ph: (406) 206-7102

Eric Waeckerlin
Julian R. Ellis, Jr. (*pro hac vice admission pending*)
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, Colorado 80202
Email: ewaeckerlin@bhfs.com
          jellis@bhfs.com
Ph: (303) 223-1100

Bella Sewall Wolitz (*pro hac vice admission pending*)
BROWNSTEIN HYATT FARBER SCHRECK, LLP
1155 F Street N.W., Suite 1200
Washington, District of Columbia 20004
Email: bsewallwolitz@bhfs.com
Ph: (202) 296-7353

Elisabeth L. Esposito (*pro hac vice admission pending*)
BROWNSTEIN HYATT FARBER SCHRECK, LLP
1415 L Street, Suite 800
Sacramento, California 95814
Email: eesposito@bhfs.com
Ph: (916) 594-9700

*Attorneys for Putative Intervenors*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| Forest Service Employees for Environmental Ethics, <br><br> *Plaintiff,* | No. 9:22-CV-168-DLC |

v.

United States Forest Service,

   *Defendant,*

Town of Paradise, California, Butte County, California, Plumas County, California, Rural County Representatives of California, American Forest Resource Council, National Alliance of Forest Owners, Federal Forest Resource Coalition, California Forestry Association, Montana Wood Products Association, Oregon Forest Industry Council, Washington Forest Protection Association, California Farm Bureau, California Women for Agriculture, and National Wildfire Suppression Association,

   *Putative Intervenor-Defendants.*

PUTATIVE INTERVENORS' BRIEF IN SUPPORT OF THEIR MOTION TO INTERVENE

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................... iv

**INTRODUCTION** ................................................................................................... 1

**BACKGROUND ON THE PUTATIVE INTERVENORS AND THEIR INTERESTS** ................................................................................... 5

**ARGUMENT** ........................................................................................................ 12

I.    Putative Intervenors Are Entitled to Intervene As of Right. ........................ 12

      A.    Putative Intervenors' motion is timely. .................................................. 13

      B.    Putative Intervenors have a significant, protectable interest in the outcome of the litigation as it directly relates to Putative Intervenors' community and economic interests...................... 17

      C.    Disposition of this action without Putative Intervenors will impede Putative Intervenors' ability to protects their interests. ............ 19

      D.    The current parties do not adequately represent Putative Intervenors' interests.................................................................................. 20

II.    Alternatively, Putative Intervenors Should Be Granted Permissive Intervention. .................................................................................................... 22

**CONCLUSION** ..................................................................................................... 24

**CERTIFICATE OF COMPLIANCE** .................................................................. 26

**CERTIFICATE OF SERVICE** ........................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

*Cases*

*Arakaki v. Cayetano,*
   324 F.3d 1078 (9th Cir. 2003) ...................................................12, 17, 20

*Berger v. N.C. State Conf. of the NAACP,*
   142 S. Ct. 2191 (2022).........................................................................12

*Capitol Indem. Corp. v. Reflections Acad., Inc.,*
   No. CV 21-57-DLC, 2021 WL 5329936
   (D. Mont. Nov. 16, 2021) ....................................................................22

*United States v. Carpenter,*
   298 F.3d 1122 (9th Cir. 2002) ............................................................16

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,*
   647 F.3d 893 (9th Cir. 2011) ..............................................................20

*Forest Conservation Council v. U.S. Forest Serv.,*
   66 F.3d 1489 (9th Cir. 1995) .........................................................18, 21

*Freedom from Religion Found., Inc. v. Geithner,*
   644 F.3d 836 (9th Cir. 2011) ........................................................22, 23

*Idaho Farm Bureau Fed'n v. Babbitt,*
   58 F.3d 1392 (9th Cir. 1995) ..............................................................16

*Kalbers v. U.S. Dep't of Just.,*
   22 F.4th 816 (9th Cir. 2021) ..........................................................15, 16

*League of United Latin Am. Citizens v. Wilson,*
   131 F.3d 1297 (9th Cir. 1997) ............................................................22

*California ex rel. Lockyer v. United States,*
   450 F.3d 436 (9th Cir. 2006) ..............................................................17

*Native Ecosystem Council v. Marten,*
   No. CV 17-153-M-DWM, 2018 WL 2364293
   (D. Mont. May 24, 2018)......................................................................21

# TABLE OF AUTHORITIES (con't)

*Native Ecosystems Council v. Marten,*
    No. CV 18-87-M-DLC, 2018 WL 5620658
    (D. Mont. Oct. 30, 2018) ...................................................................16

*Sierra Club v. EPA,*
    995 F.2d 1478, 1481 (9th Cir. 1993) ................................................19

*Smith v. Los Angeles Unified School Dist.,*
    830 F.3d 843 (9th Cir. 2016) .............................................................12

*Spangler v. Pasadena City Bd. of Ed.,*
    552 F.2d 1326 (9th Cir. 1977) ...........................................................23

*Sw. Ctr. for Biological Diversity v. Berg,*
    268 F.3d 810 (9th Cir. 2001) ...............................................12, 19, 21

*Venegas v. Skaggs,*
    867 F.2d 527 (9th Cir. 1989) .............................................................23

*W. Watersheds Project v. Haaland,*
    22 F.4th 828 (9th Cir. 2022) .............................................................13

*United States v. Washington,*
    86 F.3d 1499 (9th Cir. 1996) ............................................................13

*Wilderness Soc'y v. U.S. Forest Serv.,*
    630 F.3d 1173 (9th Cir. 2011) .........................................12, 15, 18, 19

**Federal Rules**

Fed. R. Civ. P. 24 ..............................................................12, 16, 19

Fed. R. Civ. P. 24(a)(2) ..........................................5, 12, 17, 22, 23, 24

Fed. R. Civ. P. 24(b) ...........................................5, 12, 22, 23, 24

**Other Authorities**

U.S. FOREST SERV., NATIONWIDE AERIAL APPLICATION OF FIRE
    RETARDANT ON NATIONAL FOREST SYSTEM LAND, FINAL
    ENVIRONMENTAL IMPACT STATEMENT (Oct. 2011) .............................4

# INTRODUCTION

The Town of Paradise, California, Butte County, California, Plumas County, California, the Rural County Representatives of California, American Forest Resource Council, National Alliance of Forest Owners, Federal Forest Resource Coalition, California Forestry Association, Montana Wood Products Association, Oregon Forest Industry Council, Washington Forest Protection Association, California Farm Bureau, California Women for Agriculture, and National Wildfire Suppression Association (collectively, Putative Intervenors), move to intervene as defendants in this case, which broadly seeks to enjoin the U.S. Forest Service (Forest Service) from nationwide aerial application of fire retardant. Putative Intervenors' interests in this litigation are unique and of fundamental importance: they represent the communities and industries impacted by wildfires that have spread across national forests before decimating homes, businesses, private timberlands, and other non-federal interests. The aerial application of fire retardant is part of Forest Service's firefighting strategy, and it unquestionably reduces fire's rate of spread, intensity, and danger to the public. An injunction that removes this critical tool is certain to undermine health and safety and cause economic harm to communities and businesses navigating the constant threat of wildfire.

While the Forest Service ably defends the aerial deployment of fire retardant, which is consistent with the federal government's management goals, Putative Intervenors represent the human and business interests on the front lines. In addition to communities recently devastated by wildfires, Putative Intervenors also include trade associations of forest products companies that own lands

adjacent to national forests or purchase timber from the Forest Service and other federal agencies, as well as organizations that support farming communities and an organization of private firefighters that contract with federal and state agencies. Putative Intervenors' common concern is that significant human and economic losses experienced in recent fires will compound exponentially if the Court enjoins the Forest Service from using retardant when necessary to protect human life, homes, private lands, and the environment.

Plaintiff Forest Service Employees for Environmental Ethics (FSEEE) recently moved for summary judgment seeking a nationwide injunction against the aerial application of fire retardant by the Forest Service. (Pl. Mot. for Summ. J., Doc. 6.) Plaintiff contends that aerial deployment of fire retardant *sometimes* results in fire retardant being discharged into waters of the United States, and that this violates the Clean Water Act because the Forest Service lacks a National Pollutant Discharge Elimination System (NPDES) permit for such discharges. (Pl. Br. in Supp. of Mot. Summ. J. (Pl. Br.), Doc. 7 at 2–3.)

The Forest Service opposes summary judgment. (Forest Serv. Resp. in Opp'n to Pl. Mot. for Summ. J. (Forest Serv. Opp'n), Doc. 11.) On the facts, the Forest Service explains that, of the fire retardant dropped from aircraft to stop the spread of dangerous and rapidly moving wildfire, only a small fraction of it reaches waters. Additionally, the Forest Service is actively working with the Environmental Protection Agency (EPA) and state agencies on a general permit for such discharges. (*Id.* at 5.) Because the processing time for these permits is approximately two and a half years, the Forest Service has entered into a Federal

Facility Compliance Agreement "to address the Forest Service's discharge of pollutants during aerial fire retardant applications and to require the Forest Service to obtain NPDES permit coverage for discharges to waters." (*Id.*, Perez Decl., Attach. C-1 at 13.) The Forest Service is thus working toward the permit coverage that Plaintiff seeks. Yet Plaintiff—on the eve of fire season—demands an injunction prohibiting the aerial application of retardant, despite the risks to communities and no matter how much destruction to private and public lands would follow from removing this tool from the Forest Service's toolbox. Retardant is critical to suppressing fast-moving fires in areas close to communities and where the topography may limit, delay, or preclude ground-based attack.

When filing this lawsuit, Plaintiff acknowledged that any injunction must be consistent with the public interest. (Compl., Doc. 1 at 10 (asking the Court to grant injunctive relief "to compel the Forest Service to comply with applicable environmental statutes, prevent irreparable harm, and *satisfy the public interest*" (emphasis added)).) Although Plaintiff recognized as much in its complaint, it omits further mention of the public interest and equities in its motion. The reason is clear: the public interest plainly does not support compromising the Forest Service's ability to save human lives, protect natural resources, and protect significant property interests. As the Forest Service explains, it is actively pursuing the NPDES permit through federal and state processes and, in the meantime, the Federal Facilities Compliance Agreement requires that the Forest Service comply with the 2011 Record of Decision. (Forest Serv. Opp'n at 14.) The agency further explains that any injunction must consider *all* factors for injunctive relief,

including the significant public interest and the hardships that will befall the people and businesses that live, work, and prosper in fire country.

Putative Intervenors intervene to ensure the Court has a complete accounting of the severe hardships born by the communities, property owners, and businesses devastated by catastrophic wildfires that spread across National Forest System lands before threatening non-federal lands. To be sure, the Forest Service is adamant that fire retardant "alleviate[s] threats to human life,"[1] but Putative Intervenors provide specific details about the unfortunate tragedy that results when wildfires are not contained. For example, the 2018 Camp Fire began and spread across a portion of the Plumas National Forest in Butte County, California, before burning 18,804 structures and killing 85 people in the Town of Paradise. (Decl. of Kevin Phillips [Paradise] ¶¶ 7, 12.) Paradise was devastated by this fire; it destroyed over 11,000 homes, hundreds of businesses, and five schools. (*Id.* ¶ 8.) For its part, Plumas County, California, was impacted by the second largest wildfire in California history—the 2021 Dixie Fire—which burned almost 1 million acres. (Decl. of Greg Hagwood [Plumas County] ¶¶ 4–5, 8.) Critically, the Forest Service has responsibility for initial attack of wildfires across much of the public *and* private lands within Plumas County. (*Id.*)

---

[1] (*Id.* at 28–29 (discussing how use of fire retardant created a buffer between hikers and fire and "had a direct impact on the successful evacuation of the hikers).) *See generally* U.S. FOREST SERV., NATIONWIDE AERIAL APPLICATION OF FIRE RETARDANT ON NATIONAL FOREST SYSTEM LAND, FINAL ENVIRONMENTAL IMPACT STATEMENT (Oct. 2011).

Because wildfires know no jurisdictional boundaries, Putative Intervenors rely on the Forest Service's firefighting efforts to protect their loved ones and their properties and are directly affected by Plaintiff's request for a nationwide injunction. Such a drastic remedy, if granted—just months before fire season—would prevent the aerial deployment of fire retardant, notwithstanding the real danger to public safety and private property. Firefighters are doing critical work in fighting wildfires: fires that wreak destruction and cause the tragic and avoidable loss of life and livelihood. Plaintiff's myopic focus on form over substance ignores this public interest. But the Court must balance the speculative benefits Plaintiff alleges against the substantial hardship that would follow from eliminating effective tools to fight wildfires.

To ensure that this Court is presented with information about the true scope of the public interest, the severe costs suffered by people, communities, and businesses when the fight against wildfires is lost, and the dangers and costs to the public that would result from enjoining the aerial application of fire retardant, Putative Intervenors seek to intervene as defendants under Federal Rule of Civil Procedure 24(a)(2) or, alternatively, Rule 24(b).

## BACKGROUND ON THE PUTATIVE INTERVENORS AND THEIR INTERESTS

The **Town of Paradise** (Paradise) is a town in Butte County, California, near the western portion of the Plumas National Forest. An estimated 95 percent of Paradise was destroyed in the 2018 Camp Fire, leading to the loss or damage of 11,000 housing units, 450 commercial buildings, five schools, and thousands of

utility structures. (Phillips Decl. ¶ 8.) Over 600 businesses were reported as damaged or destroyed by the fire and 85 residents died. (*Id.* ¶ 9.) Before the devastating Camp Fire, the population of Paradise was 26,256; as of January 1, 2020, the population was only 4,631. (*Id.* ¶ 4.)

**Butte County, California** is a County in California in which the Forest Service is a major landowner. (Decl. of Joshua Jimerfield [Butte County] ¶ 4.) Land owned by the Forest Service and the U.S. Bureau of Land Management (BLM) are "checkerboarded" in much of eastern Butte County, meaning that parcels managed by these federal agencies are interspersed with private lands, which makes the residents of Butte County uniquely reliant on the Forest Service's and BLM's wildfire suppression efforts. (*Id.* ¶¶ 6, 7.) Butte County was affected by two of the five deadliest and destructive wildfires in California history, both of which occurred in the last five years and spread across federal lands adjacent to private lands within Butte County. (*Id.* ¶ 8.)

**Plumas County, California** is a County in California where over 80 percent of the land base is owned by the Forest Service. (Hagwood Decl. ¶ 4.) Plumas County has been affected by two of the top fifteen largest and most destructive fires in California history, both of which occurred in the last three years and started on or spread across National Forests adjacent to private lands within Plumas County. (*Id.* ¶ 6.) One of these fires, the North Complex Fire started in August 2020, burned 318,935 acres in Plumas, Butte, and Yuba Counties, destroyed 2,352 structures, and caused 15 deaths. (*Id.* ¶ 7.)

**Rural County Representatives of California** (RCRC) is a service organization made up of 40 rural counties in California. RCRC represents its member counties by advocating on behalf of rural issues at the state and federal levels, particularly the unique challenges that rural counties face in California. These issues include land use, water and natural resources, housing, transportation, wildfire protection policies, and health and human services. The core of RCRC's mission is to improve the ability of small, rural California county governments to provide services to their smaller populations, including marshalling limited local resources to respond to catastrophic wildfires.

**American Forest Resource Council** (AFRC) is a regional trade organization representing over 50 forest product businesses and forest landowners whose purpose is to advocate for projects on public timberlands throughout the West to enhance forest health and resistance to fire, insects, and disease. AFRC does this by promoting active management to attain productive public forests, protect adjoining private forests, and assure community stability. AFRC works to improve federal and state laws, regulations, policies, and decisions regarding access to and management of public forest lands and protection of all forest lands.

**National Alliance of Forest Owners** (NAFO) is a national advocacy organization committed to advancing federal policies that ensure working forests provide clean air, clean water, wildlife habitat and jobs through sustainable practices and strong markets. NAFO member companies own and manage more than 46 million acres of private working forests—forests that are managed to

provide a steady supply of timber. NAFO's membership also includes state and national associations representing tens of millions of additional acres.

**Federal Forest Resource Coalition** (FFRC) is a coalition of small and large companies and regional trade associations whose members harvest and manufacture wood products, paper, and renewable energy from federal timber resources. FFRC's members operate in more than two dozen states and employ over 350,000 people in over 650 mills. FFRC offers a national voice for sound management of federal forests, which includes educating the public on the vital role that the forest products industry plays in the Forest Service's effort to restore forest health, reduce hazardous fuels, and protect communities.

**California Forestry Association** (Calforests) is a trade association representing forest landowners; most of the remaining sawmills and veneer mills and several biomass powerplants in California; and natural resource professionals committed to environmentally sound policies, responsible forestry, and sustainable use of natural resources. (Decl. of Matt Dias [Calforests] ¶ 4.) Calforests' members own primary manufacturing facilities in California, which process over 70 percent of the forest products manufactured in the state. (*Id.* ¶¶ 4–5.) Calforests' members own approximately 3.5 million acres of forest land in California, including private lands within the Forest Service's "Direct Protection Area," where the agency is the primary first responder in the event of wildfire. (*Id.* ¶¶ 6, 9.) Calforests members rely on the effectiveness of the federal government's response to wildfire because within much of Northern California, the Forest Service holds primary responsibility for fire protection across more than one million acres of privately

8

owned timberland, including several surrounding communities, along with millions of acres of federally managed land. (*Id.* ¶ 9.)

**Montana Wood Products Association** (MWPA) is a trade association that promotes long-term management of Montana's forests, furnishes opportunities for open discussion and appropriate interchange of information concerning all facets of the forest products industry, and accumulates and disseminates information regarding the forest products industry to foster the best interests of the industry and public. (Decl. of Julia Altemus [MWPA] ¶ 4.) MWPA's membership includes a diverse group of companies and individuals involved in Montana's forest products industry. (*Id.* ¶ 5.) This includes sawmills, manufacturers of plywood, particle board, fiberboard, pulp and paper, posts and poles, log homes, as well as timberland owners and managers and logging contractors. (*Id.*) National forests in Montana have been increasingly affected by wildfire. (*Id.* ¶ 7.) Cumulatively, major wildfire years have occurred in Montana in three-to-five year cycles since 2000 and have impacted 7.7 million acres or roughly 30 percent of the entire forested area of Montana and—unfortunately—the data shows forest health conditions continue to worsen. (*Id.*)

**Oregon Forest Industries Council** (OFIC) is a trade association representing more than 50 Oregon forestland owners and forest products manufacturers. OFIC's members combine sustainable forest management practices with the latest science and technology to continuously improve the environmental, social, and economic value of healthy working forests. OFIC's members protect and manage more than three million acres of Oregon forestlands, protect

employment of over 60,000 Oregonians, and make Oregon the nation's largest state producer of softwood lumber, plywood, and engineered wood. OFIC works to ensure the multi-generational survival of healthy forests and successful communities through collaborative partnerships with policymakers, community leaders, and advocacy organizations.

**Washington Forest Protection Association** (WFPA) is a trade association representing private forest landowners in Washington State. Its members are large and small companies, individuals, and families who grow, harvest, and regrow trees on approximately 4 million acres. WFPA members are committed to advancing sustainable forestry in Washington State to provide forest products and environmental benefits for the public.

**California Farm Bureau** (CFB) is a nonprofit association representing California's diverse farming and ranching interests. (Decl. of Jim Houston [CFB] ¶¶ 1, 3.) CFB is comprised of 53 county Farm Bureaus representing more than 28,000 agricultural, associate, and collegiate members in 56 counties. (*Id.* ¶ 3.) CFB's membership of family farmers and ranchers own or operate enterprises that rely on access to federal land for grazing, federal programs for certain conservation, and timber products. (*Id.* ¶ 4.) CFB's members support the varied uses of national forests, including pasture for livestock during the crucial summer months when ranchers must use lower elevation private lands to grow hay and other crops to sustain their operations. (*Id.* ¶ 5.) Wildfires on national forests during the grazing season can threaten—and even kill—livestock, disrupt operations, and harm CFB's members that hold Forest Service grazing permits. (*Id.*

¶ 7.) Additionally, many members own farm and ranch lands adjacent to the 18 national forests in California or live in rural communities in which the federal government has primary responsibility for responding to wildfires. (*Id.* ¶¶ 8–9.)

**California Women for Agriculture** (CWA) is a membership organization made up of 20 chapters (from Butte County to California's southern border) representing 1,300 stakeholders in the agriculture industry. CWA is the most active, all volunteer agricultural organization in the state, and includes farmers, ranchers, bankers, lawyers, accountants, marketing professionals, support services, and consumers. CWA advocates for the economic sustainability of the state's diverse agriculture community, which includes advocating for wildfire protection.

**National Wildfire Suppression Association** (NWSA) is a nonprofit comprised of approximately 250 member organizations throughout the United States, representing 10,000 private wildland firefighting professionals. When the magnitude of a fire event exceeds federal and state agency resources, these agencies contract with professional wildland fire contractors. More than 420 crews and approximately 14,000 pieces of specialized equipment are available for dispatch from private wildland fire services across the country. Due to budget cuts and increased fire activity, private contractors are increasingly called to the front lines and they have an acute interest in the firefighting resources available to the Forest Service, including aerial discharge of fire retardant.

## ARGUMENT

Rule 24 provides two avenues for a non-party to intervene in a pending lawsuit: as a matter of right under Rule 24(a)(2), and as a matter of permission under Rule 24(b). Both avenues broadly favor intervention. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003); *Smith v. Los Angeles Unified School Dist.*, 830 F.3d 843, 853 (9th Cir. 2016).

Putative Intervenors should be permitted to intervene as defendants under Rule 24(a)(2) or, alternatively, under Rule 24(b).

## I.     Putative Intervenors Are Entitled to Intervene As of Right.

The "starting point" is Rule 24(a)(2), which "provides that a 'court must permit anyone to intervene' who, (1) '[o]n timely motion,' (2) 'claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest,' (3) 'unless existing parties adequately represent that interest.'" *Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191, 2200–01 (2022); *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177–78 (9th Cir. 2011) (en banc). In evaluating these factors, "[c]ourts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001) (*Southwest Center*). Putative Intervenors satisfy each Rule 24(a)(2) requirement.

12

## A. Putative Intervenors' motion is timely.

Although summary judgment briefing is pending, this case is very much in its infancy. The complaint was filed less than five months ago, on October 11, 2022. (*See* Compl.) The Forest Service only filed its answer on December 12, 2022. (*See* Forest Serv. Answer, Doc. 5.) Less than two months ago, Plaintiff moved for summary judgment, and the Forest Service responded on February 17, 2023. (Pl.'s Mot.; Forest Serv. Opp'n.) When determining the timeliness of a motion to intervene, courts consider the totality of the circumstances, including "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 836 (9th Cir. 2022).

The "crucial date for assessing the timeliness of a motion to intervene is when Putative Intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Id.* at 836; *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996) ("Delay is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties, not the date it learned of the litigation."). Putative Intervenors only recently became aware that their interests are not adequately protected when the Forest Service filed its response to Plaintiff's motion for summary judgment. As evidenced by their backgrounds and varied interests, Putative Intervenors represent a diverse coalition of local governments and trade associations, representing both large and small businesses across the United States. While the Forest Service ably defends its firefighting mission, the

Service lacks the resources and time to fully represent Putative Intervenors' interests, especially the harm communities, landowners, and businesses will bear if Plaintiff is awarded nationwide injunctive relief. (*Cf.* Forest Serv. Opp'n at 20 (explaining Plaintiff's requested injunction "seriously affect[s]" "many parties and their interests that are not before this Court").)

Plaintiff's complaint obscured its desire—recently made manifest in Plaintiff's briefing—to eliminate a critical tool available to the Forest Service while it completes the NPDES permitting process. True, Plaintiff's complaint requested that the Court grant injunctive relief. But Plaintiff's request for injunctive relief only vaguely sought "to compel the Forest Service to comply with applicable environmental statutes, prevent irreparable harm, and satisfy the public interest." (Compl. at 10.) Yet now Plaintiff demands that "th[e] Court must enjoin the Forest Service from aerial application of retardants into navigable waters unless and until it obtains an NPDES permit to do so." (Pl. Br. at 8; *see also id.* at 9.) Plaintiff's initial silence on its quest to seek a nationwide injunction on aerial application of fire retardant—notwithstanding the harm to communities and landowners already suffering the impacts of recent fire seasons and with no health and safety exceptions—supports Putative Intervenors' timeliness argument.

Plaintiff's January 10 motion for summary judgment clarified Plaintiff's goals, and the need to intervene became clear after the Forest Service filed its response to the motion. That response emphasizes that courts must apply certain requirements before granting injunctive relief, including whether such relief would harm the public interest and the balance of hardships between the plaintiff and

14

defendant. A complete analysis of the injunctive relief requirements, as it concerns Plaintiff's effort to eliminate a critical resource for fighting wildfires that would affect communities across the country for at least two fire seasons, must consider the interests and hardships of those who will be most impacted. Putative Intervenors represent those interests who face devastation in the wake of wildfires and will provide a valuable—and necessary—voice in this litigation.

Again, this case is at an early stage. The Court has not set a date for oral argument on summary judgment or entered any substantive decisions or rulings for that matter. In evaluating timeliness, the Ninth Circuit has explained that courts are "mindful of the balance of policies underlying intervention." *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 823 (9th Cir. 2021). To achieve that balance, courts favor intervention in general because it "serves both efficient resolution of issues and broadened access to the courts." *Id.* (quoting *Wilderness Soc'y*, 630 F.3d at 1179). And courts avoid interpreting timeliness requirements in a way that would encourage premature intervention, which might squander judicial resources and increase litigation costs, instead allowing parties to intervene even after a case has proceeded for years in situations where the proposed intervenor reasonably believed that intervention at an earlier stage was not necessary because its interests were fully protected by the existing parties.

Here, Putative Intervenors, representing a broad coalition of interests, promptly responded after determining their interests are central to the litigation and not adequately represented by the existing parties. Not only that, but Putative Intervenors were deliberate in not burdening the Court with countless intervention

15

motions. Rather, the group took the time to organize, hire counsel, and present a single motion, to avoid undue delay and complication. Putative Intervenors' motion is consistent with Rule 24's timeliness requirement and courts' recognition that it takes time to evaluate respective interests and whether they are properly represented by existing parties. *See Native Ecosystems Council v. Marten*, No. CV 18-87-M-DLC, 2018 WL 5620658, at *1 (D. Mont. Oct. 30, 2018) (finding no unreasonable delay and granting intervention in case five months after the complaint was filed and after a preliminary injunction had been granted). The Ninth Circuit has also approved intervention at much later stages of the litigation. *See, e.g., United States v. Carpenter*, 298 F.3d 1122, 1125–26 (9th Cir. 2002) (reversing district court and ordering the court to grant the motion to intervene after months of settlement negotiations resulting in a proposed settlement that environmental group plaintiff intervenors opposed); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (holding a motion to intervene timely when filed "before any hearings or rulings on substantive matters").

Not only have Putative Intervenors acted with deliberation and haste, but there will be no prejudice to Plaintiff or the Forest Service. "[P]rejudice must be connected in some way to the timing of the intervention motion—and the fact that including another party in the case might make resolution more difficult does not constitute prejudice." *Kalbers*, 22 F.4th at 825 (cleaned up). Although Plaintiff has moved for summary judgment, the Forest Service has provided strong reasons for why summary judgment is premature without a trial on certain contested facts. And this Court has not yet issued a single substantive ruling.

In the end, Putative Intervenors have interests that are aligned with—but more concrete—than the policy and resource management interests of the Forest Service. Their participation will ensure that the outcome of this litigation is based on accurate information about the dangers of wildfire and the benefits of the Forest Service's use of aerially delivered fire retardants in certain circumstances. Putative Intervenors have no interest in delaying resolution of this litigation and agree to work with the parties and the Court to set an efficient briefing schedule. Counsel for Putative Intervenors have suggested a revised schedule for summary judgment that would allow Putative Intervenors to respond to Plaintiff's motion for summary judgment and to allow Plaintiff to reply. Under the proposed schedule, briefing on summary judgment could be concluded within 35 days of the Court's order granting intervention. Thus, Putative Intervenors' motion is timely and may be granted without prejudice to any of the parties.

> **B.** **Putative Intervenors have a significant, protectable interest in the outcome of the litigation as it directly relates to Putative Intervenors' community and economic interests.**

Intervention is proper when the putative intervenor has a "significantly protectable interest"—that is, an interest "protectable under some law"—that bears a relationship to the claims at issue in the litigation. *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003). A party has a "sufficient interest ... if it will suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006). Putative Intervenors meet the "practical impairment" test of Rule 24(a)(2). Through this lawsuit, Plaintiff seeks to enjoin the aerial application of fire retardant by the

Forest Service and deprive the Forest Service of this important firefighting tool. Not only will such relief threaten public safety, but it will imperil resources on private lands near National Forest System lands and protectable interests in timber under contract on National Forest lands and will endanger the communities and businesses that the Putative Intervenors represent.

Putative Intervenors' participation will ensure they have the opportunity to protect their interests and explain the resulting harm to the communities, landowners, and companies that rely on the Forest Service's deliberate and swift action to prevent catastrophic wildfires from intensifying and spreading. The Court will also benefit from Putative Intervenors' insight into the hardships that will result from preventing the Forest Service from the aerial application of fire retardant. The context Putative Intervenors offer is relevant to why a nationwide injunction is against the public interest and cannot survive a balance-of-the-hardships analysis. The interests represented by Putative Intervenors are unquestionably relevant to any relief awarded in this case, and, absent Putative Intervenors' voice, the Court stands to decide a matter impacting those on the frontlines with incomplete information. *See Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1497 (9th Cir. 1995) (finding Arizona's interests in the "environmental health of, and wildfire threats to, state lands adjacent to national forests … are concrete, plausible interests"), *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011).

### C. Disposition of this action without Putative Intervenors will impede Putative Intervenors' ability to protects their interests.

"If an absentee would be substantially affected in a practical sense by the determination made in an action, [it] should, as a general rule, be entitled to intervene." Rule 24, adv. Comm. notes; *Southwest Center*, 268 F.3d at 822. A legal or practical impact to the Putative Intervenors' interests may suffice, such as that of stare decisis. *See id.*; *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993), *abrogated on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (holding precedential effect of ruling regarding city's waste-water permit satisfied third factor of intervention test in favor of permitting the city to intervene). Putative Intervenors satisfy this standard.

Here, Putative Intervenors would plainly be "substantially affected in a practical sense" if the Court entertains Plaintiff's broad request for injunctive relief and enjoins the Forest Service from applying fire retardant using aerial means, notwithstanding the risk to human life, property, and valuable forest resources. Given the sheer quantity of land in proximity to national forest lands that the Putative Intervenors own or manage, there is a high likelihood that if Plaintiff is successful in obtaining the relief it seeks, Putative Intervenors will be damaged by fire that could otherwise have been prevented by appropriate use of fire retardant by the Forest Service. In that way, Putative Intervenors' unique interests include:

- Representing local communities in areas where the federal government has the primary responsibility for initial attack of wildfires;
- Protecting residents and visitors from the impacts of wildfires that burn on national forests before threatening the public health, human lives,

businesses, and infrastructure, including schools and water systems, in communities adjacent to national forests;

- Ensuring the Forest Service has tools to save lives, including the lives of firefighters;

- Avoiding billions of dollars of devastating losses to private property, including timberlands that provide jobs, recreation opportunities, and ecosystem services including clean air and clean water;

- Preserving the valuable wildlife habitat provided by private forestlands, which is threatened by the spread of catastrophic wildfire from adjacent national forests;

- Preserving the private forests and communities that are closest to National Forest System lands and therefore rely on effective Forest Service firefighting efforts; and

- Protecting National Forest timber resources under contract to members of the Putative Intervenors' associations.

(*See generally* Decls. of Hagwood, Phillips, Dias, Joseph, Altemus, Jimerfield, and Houston.) To be clear, any relief that would limit the use of fire retardant—or other tools available to the Forest Service—would negatively impact Putative Intervenors, which rely on swift and effective initial attack by the Forest Service.

## D.     The current parties do not adequately represent Putative Intervenors' interests.

Neither Plaintiff nor the Forest Service adequately represents Putative Intervenors' unique and fundamental interests. "The burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (quoting *Arakaki*, 324 F.3d at 1086). This standard adopts a liberal policy in favor of granting intervention: in determining the adequacy of representation, courts

consider whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; whether the present party is capable and willing to make such arguments; and whether the intervenor would offer any necessary elements to the proceedings that other parties would neglect. *Forest Conservation Council*, 66 F.3d at 1498–99.

When an existing party is a government agency, inadequacy of representation "is most likely to be found when the applicant asserts a personal interest that does not belong to the general public." *Id.* at 1499. Indeed, federal agencies are "required to represent a broader view than the more narrow, parochial interest of [proposed intervenors a State and County]." *Id.* Thus, "a federal agency … cannot be expected under the circumstances presented to protect these private interests." *Southwest Center*, 268 F.3d at 823; *see also Native Ecosystem Council v. Marten*, No. CV 17-153-M-DWM, 2018 WL 2364293, at *2 (D. Mont. May 24, 2018) (noting that while both the Forest Service and intervenors sought to defend the regulatory process followed in the case because their goals are different).

Putative Intervenors easily meet the standard for showing inadequacy of representation by the Forest Service. Unlike the Forest Service, with its general goals of managing public lands for multiple use, the Putative Intervenors include a coalition of entities that, because of where they are located, are especially vulnerable to the potential devastation of wildfires and are uniquely reliant on the federal government's quick and effective response to wildfires. The communities among Putative Intervenors are vulnerable to suffer from loss of life, loss of housing, loss of livelihoods for their citizens, and loss of needed infrastructure

21

from wildfire. Likewise, forest landowners and forest products companies can see their carefully managed timber lands and investment literally go up in smoke. The Putative Intervenors will help to develop facts that are relevant to the disposition of this case and that the existing parties would otherwise likely neglect: the actual community-level and economic impacts of hamstringing the Forest Service's ability to fight wildfires. *See generally Capitol Indem. Corp. v. Reflections Acad., Inc.*, No. CV 21-57-DLC, 2021 WL 5329936, at \*1 (D. Mont. Nov. 16, 2021) (finding that "any burden resulting from delay is outweighed by the interest in resolving this case on a complete factual record").

Consequently, the Forest Service does not adequately represent Putative Intervenors' interests that may be impaired by this lawsuit. Because Putative Intervenors satisfy Rule 24(a)(2)'s requirements, Putative Intervenors must be permitted to intervene as a defendant in this litigation.

## II. Alternatively, Putative Intervenors Should Be Granted Permissive Intervention.

Rule 24(b) grants courts broad discretion to permit intervention where: (1) the applicant for intervention shows independent ground for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense and the main action share a common question of law or fact. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997); *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011). Only the second and third

requirements are at issue.[2] If Rule 24(b) grounds are satisfied, courts may also consider whether intervention will unduly delay or prejudice the parties, whether intervenors will introduce complex or novel legal issues, whether intervenors are adequately represented by the parties to the litigation, and whether the intervenors will contribute to the development of underlying factual issues in the suit. *Venegas v. Skaggs*, 867 F.2d 527, 530–31 (9th Cir. 1989); *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977). Here, even if intervention as a matter of right is not granted, permissive intervention is most certainly warranted.

*First*, courts apply the same timeliness analysis discussed under Rule 24(a)(2) to permissive intervention under Rule 24(b). As discussed above, Putative Intervenors' motion is timely because it was filed within two weeks of the Forest Service's opposition to Plaintiff's motion for summary judgment. Plaintiff's complaint did not reveal that it was seeking a nationwide injunction; this is the primary aspect of the case that makes it of great concern to Putative Intervenors. The case is at an early stage, with no substantive rulings from this Court, and lack

---

[2] The "independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims." *Freedom from Religion Found.*, 644 F.3d at 844. Plaintiff alleges that the Forest Service is violating the Clean Water Act. Putative Intervenors are not seeking to add new claims to the litigation; they only seek to protect their interests in the Forest Service's ability to adequately respond to and prevent wildfires (including by using fire retardants) that threaten their interests. Assuming Plaintiff has standing and has alleged a federal question, the Court's jurisdiction will not change by allowing Putative Intervenors to intervene.

of agreement between the parties regarding whether summary judgment is appropriate. The timing of this motion does not prejudice any party.

*Second*, Plaintiff's claims and Putative Intervenors' defenses for the Forest Service's policy of using aerial means to deliver fire retardant in appropriate circumstances concern common questions of law and fact. (*See generally* Putative Intervenors' Proposed Answer in Intervention.) Indeed, an injunction against the use of fire retardants would pose a significant hardship Putative Intervenors. The communities, property owners, and businesses that Putative Intervenors represent live and operate on the frontlines near federal forest lands and will experience a drastic increase in fire risk if Plaintiff prevails. So, the interests that Putative Intervenors seek to protect are *the* human and economic interests that could be decimated by any relief granted to Plaintiff, even if such relief is more targeted than the nationwide injunction Plaintiff now seeks. For these reasons, Putative Intervenors should be allowed to participate in this case.

## CONCLUSION

Putative Intervenors request that this Court grant them intervention as of right in this lawsuit as defendants under Rule 24(a)(2), or in the alternative, permissive intervention under Rule 24(b).

Dated: March 9, 2023.                    Respectfully submitted,


_____
W. Adam Duerk
KNIGHT NICASTRO MACKAY, LLC
283 W. Front Street, Suite 203
Missoula, Montana 59802
Email: duerk@knightnicastro.com
Ph: (406) 206-7102

Eric Waeckerlin
Julian R. Ellis, Jr. (*pvh pending*)
BROWNSTEIN HYATT
  FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, Colorado 80202
Email: ewaeckerlin@bhfs.com
        jellis@bhfs.com
Ph: (303) 223-1100

Bella Sewall Wolitz (*pvh pending*)
BROWNSTEIN HYATT
  FARBER SCHRECK, LLP
155 F. Street, NW, Suite 1200
Washington, District of Columbia
20004
Email: bsewallwolitz@bhfs.com
Ph: (202) 296-7353

Elisabeth L. Esposito (*pvh pending*)
BROWNSTEIN HYATT
  FARBER SCHRECK, LLP
1415 L Street, Suite 800
Sacramento, California 95814
Email: eesposito@bhfs.com
Ph: (916) 594-9700

***Attorneys for Putative Intervenors***

25

**CERTIFICATE OF COMPLIANCE**

I certify **Putative Intervenors' Brief in Support of Their Motion to Intervene** complies with the type-volume limitation of Local Rule 7.1(d)(2)(A). The brief contains 6,173 words in a proportionally spaced font style, excluding caption, certificate of compliance, tables of contents and authorities, signature block, and any certificate of service.

W. Adam Duerk

**CERTIFICATE OF SERVICE**

I certify that on March 9, 2023, a copy of **Putative Intervenors' Brief in Support of Their Motion to Intervene** was hand delivered to the Clerk of Court, U.S. District Court for the District of Montana, 201 E. Broadway Street, Missoula, Montana 59802. A courtesy copy was also emailed to all counsel of record.

W. Adam Duerk