IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| FOREST SERVICE EMPLOYEES FOR ENVIRONMENTAL ETHICS,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES FOREST SERVICE,<br><br>Defendant. | CV 22–168–M–DLC<br><br>ORDER |

Before the Court is Applicants' Motion to Intervene (Doc. 21),[1] Defendant United States Forest Service's ("USFS") Motion for Leave to File Surreply (Doc. 26), and Plaintiff Forest Service Employees for Environmental Ethics' ("FSEEE") Unopposed Motion for Hearing on their Motion for Summary Judgment (Doc. 29). For the reasons discussed below, the Court denies the motion to intervene, denies the motion for leave to file surreply, and grants the motion for hearing.

## Background

FSEEE brings this action, pursuant to 33 U.S.C. § 1365(a), challenging

---

[1] Applicants are a coalition of fourteen entities: Town of Paradise, California; Butte County, California; Plumas County, California; Rural County Representatives of California; American Forest Resource Council; National Alliance of Forest Owners; Federal Forest Resource Coalition; California Forestry Association; Montana Wood Products Association; Oregon Forest Industry Council; Washington Forest Protection Association; California Farm Bureau; California Women for Agriculture; and National Wildfire Suppression Association. (Docs. 21 at 2–3, 22 at 10–16.)

1

USFS's discharge of aerially deployed fire retardant into navigable waters of the United States without an NPDES permit, in violation of the Clean Water Act, 33 U.S.C. § 1251 *et seq.* (Doc. 1 at 1.) FSEEE alleges that such discharges have occurred on "at least 459 occasions" between 2012 and 2019, "totaling 761,282.5 gallons." (*Id.* at 5.) FSEEE seeks a declaratory judgment against USFS and to enjoin USFS from the aerial application of fire retardants unless and until it obtains an NPDES permit to do so. (*Id.* at 9–10; *see also* Doc. 7 at 8, 9.)

In its Answer to the Complaint, USFS admits that, "in certain circumstances, the Forest Service has discharged aerial fire retardant into navigable waters in this Division without a[n] [NPDES] permit." (Doc. 5 at 3.) USFS also acknowledges that in the future it may again discharge fire retardant from aircraft into navigable waters without an NPDES permit. (*Id.* at 4.) USFS further admits that "if fire retardant enters a waterway, direct effects could include, in certain circumstances, lethal and sub-lethal effects on aquatic species." (*Id.* at 8.) However, USFS "denies that the Plaintiff is entitled to the requested relief or any relief whatsoever." (*Id.* at 9.)

FSEEE has moved for summary judgment. (Doc. 6.) In response, USFS argues that FSEEE has not established standing to enforce the alleged statutory violations other than those pertaining to Sespe Creek in California, (Doc. 11 at 15), and that FSEEE has not demonstrated entitlement to the prohibitory injunction it

seeks, (*id.* at 17).  USFS explains that its use of aerially deployed fire retardant is governed by its 2011 Record of Decision.  (Doc. 12 at 8.)  USFS disputes the total number of intrusions into navigable waterways—arguing that only 213 occurred in that same timeframe—and disputes the potential risks of such intrusions.  (*Id.* at 5–7.)  USFS also explains that such intrusions only happened where it was necessary "to protect human life or public safety (23 intrusions) or due to accident (190 intrusions)."  (*Id.* at 9.)

USFS also represents that it has begun the process of obtaining "a general NPDES permit from [the Environmental Protection Agency ("EPA")] and the 47 states authorized to implement the NPDES program in its jurisdiction."  (*Id.* at 10.)  The estimated timeframe for obtaining the permit is two and a half years.  (*Id.* at 11.)  In the meantime, USFS and EPA have "entered into a Federal Facility Compliance Agreement," which requires USFS to obtain the general NPDES permit but allows the continued aerially deployment of fire retardant pursuant to USFS's 2011 Record of Decision until such permit is obtained.  (*Id.* at 13–14.)

## Analysis

I. **Motion to Intervene**

Applicants seek to intervene as of right under Rule 24(a)(2), or in the alternative, intervene permissively under Rule 24(b).  (Doc. 21 at 3.)

**A. Intervention as of Right**

Rule 24(a)(2) permits parties to intervene as of right where:

(1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest.

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (quoting *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006)). The party seeking to intervene has the burden of proving each of these elements is met. *Prete*, 438 F.3d at 954. The requirements are "broadly interpreted in favor of intervention," *id.*, and the "review is guided primarily by practical considerations, not technical distinctions," *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (internal quotation marks and citation omitted). Applicants have presented arguments on each of these four requirements, (*see* Doc. 22), and FSEEE contests each, (*see* Doc. 25). However, Applicants have failed to meet their burden on the fourth requirement, and therefore, the Court need only address the adequacy of representation.

There are three factors the Court must consider when determining the adequacy of representation:

(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such

arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (citing *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986)). Although "[t]he burden on proposed intervenors in showing inadequate representation is minimal . . . , [w]hen an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Id.* (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th Cir. 1997)). To overcome this presumption requires the putative intervenor to make a "compelling showing" of inadequate representation, beyond a mere difference in litigation strategy. *Id.*

Here, Applicants and USFS share the same ultimate objective and Applicants have failed to make a compelling showing of inadequate representation. Applicants have indicated that their ultimate objective is for USFS to continue its use of aerial fire retardant to fight wildfires. (Doc. 21 at 3 ("[Applicants'] common concern is that significant human and economic losses . . . will compound exponentially if Plaintiff prevails and the Court enjoins [USFS] from using fire retardant deployed from aircraft when necessary . . . .").) Moreover, several of the individual entities admit to sharing the same ultimate objective as USFS. (Docs. 22-1 at 7, 22-2 at 9, 22-3 at 10, 22-5 at 7, 22-6 at 6–7, and 22-7 at 6.) USFS has

5

argued against FSEEE's request for injunctive relief and seeks an outcome that would ultimately allow USFS to continue using aerial fire retardant to fight wildfires when necessary.  (*See* Doc. 11.)

The circumstances of this case are dissimilar to cases where the Ninth Circuit has held intervention as of right was appropriate.  For example, in *Citizens for Balanced Use*, the court held that, even assuming putative intervenors' (the "applicants") and USFS shared the same ultimate objective, the applicants had made a compelling showing that their interests would not be adequately represented.  647 F.3d at 899.  The applicants sought to join as defendants in an action challenging an Interim Order of the USFS.  *Id.* at 895.  The applicants argued that USFS had "reluctantly adopted the restrictions on motorized use in the Interim Order [challenged here]—restrictions that are favorable to [the] [a]pplicants' interests—in response to successful litigation the [a]pplicants themselves brought" and USFS sought to "overturn on appeal the very court decisions that forced it to adopt the Interim Order." *Id.* at 899.  Based on these arguments, the court held that it could not "conclude that [USFS] will undoubtedly make all of [the] [a]pplicants' arguments, nor . . . be assured that [USFS] is capable of making and willing to make such arguments." *Id.* at 901.

By comparison, here, Applicants have not made any showing, let alone a compelling one, that USFS is unwilling to make, or incapable of making, all of

Applicants' arguments or that Applicants would offer any necessary elements to the proceeding that USFS would neglect. Applicants point to their unique perspective on "the actual community-level and economic impacts of hamstringing the Forest Service's ability to fight wildfires." (Doc. 22 at 26–27.)  However, Applicants' attempt to differentiate their perspective from USFS's "general goals of managing public lands for multiple use" does not amount to a "compelling showing" of inadequate representation. (*Id.* at 26.)

Accordingly, the Court finds that USFS will adequately represent Applicants' interests and, therefore, Applicants are not entitled to intervention as of right. Next, the Court will address whether permissive intervention is appropriate.

### B. Permissive Intervention

A Court may permit a party to intervene under Rule 24(b) where the applicant shows: "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or . . . fact in common." *League of United Latin Am. Citizens*, 131 F.3d at 1308. Whether to permit intervention is within the Court's discretion, and the Court may deny intervention even where an applicant satisfies these threshold requirements. *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998); *see also Cameron v. EMW Women's Surgical Center, P.S.C.*, 142 S. Ct. 1002, 1011–12 (2022) ("Resolution of a motion for permissive intervention is committed to the

discretion of the court before which intervention is sought." (citation omitted)). In addition to these threshold issues, the Court may also consider whether intervention would "unduly delay or prejudice the adjudication of the rights of the original parties . . . , whether the movant's interests are adequately represented . . . , [and] judicial economy." *Venegas v. Skaggs*, 867 F.2d 527, 530–31 (9th Cir. 1989) (internal quotation marks and citations omitted). In exercising this discretion, the Court agrees with the District of Idaho that "the Court should avoid 'piling on' litigants without cause." *United States v. Howell*, Case No. 3:16-cv-00164-BLW, 2018 WL 4500134, at *3 (D. Idaho Sept. 19, 2018) (citation omitted).

When determining timeliness under Rule 24(b)(2), the Court considers: (1) the stage of the proceedings; (2) the prejudice to existing parties; and (3) the length of and reason for the delay. *League of United Latin Am. Citizens*, 131 F.3d at 1308 (citing *County of Orange v. Air Cal.*, 799 F.2d 535, 539 (9th Cir. 1986)). The Ninth Circuit has described the timeliness analysis as "nuanced and pragmatic," as opposed to adhering to strict temporal deadlines. *Id.* at 1303. However, in the context of permissive intervention, the Court analyzes the timeliness element more strictly than with intervention as of right. *Id.* at 1308 (citing *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984)). The Ninth Circuit has also explained that "the crucial date for assessing the timeliness of a motion to intervene is when

proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 836 (9th Cir. 2022).

The Court finds that the timeliness factor and practical considerations disfavor permissive intervention.  FSEEE filed its Complaint on October 11, 2022.  (*See* Doc. 1.)  USFS filed its Answer on December 12, 2022.  (*See* Doc. 5.)  FSEEE's Motion for Summary Judgment was filed on January 10, 2023, and USFS responded on February 17, 2023.  (*See* Docs. 6, 11.)  Applicants then filed their Motion to Intervene on March 9, 2023, the same day that the Motion for Summary Judgment became fully briefed.  (*See* Docs. 21, 24.)

Applicants represent that they began the process of organizing into a collective for purposes of intervening in this action as soon as USFS filed its response to FSEEE's Motion for Summary Judgment and "the need to intervene became clear." (Doc. 22 at 19–21.)  Applicants have suggested a revised briefing schedule that would add an additional 35 days from the date of this Order for summary judgment briefing.  (Doc. 22 at 22.)  However, the practical considerations here require that the Court set a hearing on the summary judgment motion as soon as possible in order to resolve this time-sensitive matter.  As discussed above, FSEEE seeks to enjoin USFS's use of aerially deployed fire retardant—an issue which becomes increasingly urgent as wildfire season

approaches.  Applicants' proposed schedule would result in an unwarranted delay.

Furthermore, as discussed above, Applicants' interests are adequately represented by USFS.  Applicants' addition to these proceedings as an intervenor would not provide any benefit, and to the extent Applicants wish to have their interests heard and considered, this can be achieved more efficiently through an amicus brief.

Accordingly, the Court denies Applicants' request for permissive intervention but will allow Applicants to collectively submit an amicus brief and present argument at the hearing on the motion for summary judgment.

## II.   Motion for Leave to File Surreply

In its Motion for Leave to File Surreply, USFS requests that it be permitted to respond to FSEEE's "new, significantly broader standing evidence in Mr. Wuerthner's declaration [(Doc. 18.)], to which [USFS] has not had an opportunity to respond."  (Doc. 26 at 3.)  Mr. Wuerthner's declaration was filed after USFS's Response to FSEEE's Motion for Summary Judgment and addresses FSEEE's standing to bring this action.  (*See* Doc. 18.)

The Court is not convinced that a surreply would aid in its understanding of the issues and the parties' arguments; the motion for surreply is denied.

## III.   Motion for Hearing

FSEEE filed its Motion for Summary Judgment (Doc. 6) on January 10,

10

2023. The issue is now fully briefed, apart from any amicus brief submitted by Applicants, and FSEEE has filed an Unopposed Motion for Hearing (Doc. 29). The Court will grant the requested hearing.

Accordingly, IT IS ORDERED that Applicants' Motion to Intervene (Doc. 21) is DENIED.

IT IS FURTHER ORDERED that, pursuant to L.R. 7.5, Applicants shall be permitted to participate in this case, collectively, as an amicus party by filing an amicus brief on or before April 14, 2023.

IT IS FURTHER ORDERED that Defendant's Motion for Leave to File Surreply (Doc. 26) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Hearing (Doc. 29) is GRANTED. A hearing on Plaintiff's Motion for Summary Judgment will be held on April 21, 2023, at 9:00 a.m. at the Russell Smith Federal Courthouse in Missoula, Montana. Each party shall be afforded 45 minutes for argument, irrespective of any time spent answering questions posed by the Court. Additionally, the amicus party shall be afforded 15 minutes for argument, irrespective of any time spent answering questions posed by the Court.

DATED this 30th day of March, 2023.

_____
Dana L. Christensen, District Judge
United States District Court