ALAN D. GREENBERG
U.S. Department of Justice
Environmental Defense Section
999 18th Street, Suite 370
Denver, CO  80202
Phone: (303) 844-1366
FAX: 303-844-1350
Email:  alan.greenberg@usdoj.gov

JOHN M. NEWMAN
Assistant U.S. Attorney
U.S. Attorney's Office
P.O. Box 8329
Missoula, MT 59807
101 E Front Street, Suite 401
Missoula, MT 59802
Phone: (406) 829-3336
Email: john.newman@usdoj.gov

*ATTORNEYS FOR DEFENDANT*
*UNITED STATES FOREST SERVICE*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| FOREST SERVICE EMPLOYEES FOR ENVIRONMENTAL ETHICS, | ) ) ) CV-22-168-M-DLC |
| Plaintiff, | ) ) DEFENDANT'S RESPONSE TO ) PLAINTIFF'S MOTION FOR FEES ) AND COSTS |
| vs. | ) ) |
| UNITED STATES FOREST SERVICE, | ) ) ) |
| Defendant. | ) ) ) |

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................1

II.  RELEVANT BACKGROUND ...........................................................2

III. ARGUMENT ......................................................................................4

   A. FSEEE's Motion for Fees May Be Premature. .................................4

   B. The Most Critical Factor in Determining the Reasonableness of FSEEE's Fee Request is the Degree of Success Obtained. ........................................4

   C. FSEEE Obtained Limited Success, So the Court Should Reduce FSEEE's Fee Request by 60 Percent. ...................................................6

   D. The Court Should Reduce the Hourly Rate Sought by Mr. Bechtold..............9

IV. CONCLUSION ................................................................................11

Defendant United States Forest Service ("Forest Service") opposes in part Plaintiff Forest Service Employees for Environmental Ethics' ("FSEEE") motion for fees and costs, Doc. No. 46.

## I.    INTRODUCTION

FSEEE's motion may be premature.  The Court granted in part and denied in part FSEEE's motion for summary judgment.  Doc. 45.  The Court does not appear to have entered a "final order," which is a prerequisite under 33 U.S.C. § 1365(d) for the award of litigation costs and fees that FSEEE seeks.

If FSEEE's fee request is not premature, the amount of fees that FSEEE seeks is not reasonable.  The most critical factor in determining the reasonableness of a fee request in this case is the degree of success obtained.  The Court's ruling on summary judgment provided FSEEE minimal overall success on the merits. FSEEE obtained a declaratory order that the Forest Service's unpermitted aerial discharges of fire retardant into navigable waters in ten western states violated in the Clean Water Act.  But the declaratory judgment did not alter the Forest Service's conduct because the Forest Service had already acknowledged the need to obtain a Clean Water Act permit for the aerial discharge of fire retardant to waters of the United States to fight fires.  It had entered into a Federal Facility Compliance Agreement with EPA that required the Forest Service to come into compliance with the Clean Water Act by obtaining the necessary permits.  FSEEE

cannot legally obtain fees based on a catalyst theory that its complaint prompted this action by the Forest Service.

Even more important in this case, FSEEE obtained no injunctive relief. FSEEE sought to enjoin aerial application of retardants into navigable waters unless and until the Forest Service has a legal NPDES permit to do so.  Doc. 7 at 9. The Court denied that requested injunction and granted no other injunctive relief. FSEEE did not succeed on the primary relief it sought in this case.

Having obtained a declaratory order that does not alter the Forest Service's conduct and no injunctive relief, FSEEE's minimal success requires the reduction of their reasonable hours by 40 percent.  FSEEE's claim should be further reduced to reflect a reasonable hourly rate for Mr. Bechtold of $380 per hour for time spent in 2022 and $390 per hour for time spent in 2023.  This yields total fees and costs of $28,269.65.

## II.   RELEVANT BACKGROUND

FSEEE's complaint alleged that the Forest Service's aerial discharge of fire retardant into waters of the United States violated the Clean Water Act.  Doc. 1, ¶ 1.  FSEEE sought a declaration that the Forest Service's unpermitted discharges of retardant pollutants into waterways from aircraft point sources violate the Clean Water Act.  *Id.* at 9.  FSEEE also sought injunctive relief to compel the Forest

Service to comply with applicable environmental statutes, prevent irreparable harm, and satisfy the public interest. *Id.* at 10.

The Forest Service's answer to the complaint did not contest its liability. The Forest Service admitted that it had in the past and planned in the future to aerially discharge fire retardant to waters of the United States without a Clean Water Act permit. Doc. 5, ¶ 15.[1] FSEEE recognized this admission in its motion for summary judgment. Doc. 6 at 1 ("In its Answer, Defendant United States Forest Service admits its violations of the Clean Water Act as alleged in FSEEE's Complaint.").

FSEEE's brief supporting its motion for summary judgment requested that the Court find that the Forest Service is violating the Clean Water Act. Doc. 7 at 9. It also clarified the nature of the injunctive relief FSEEE sought by requesting that the Court "enjoin aerial application of retardants into navigable waters unless and until the Forest Service has a legal NPDES permit to do so." Doc. 7 at 9. The

---

[1] The Court observed that the Forest Service did not admit that fire retardant is a pollutant. Doc. 45 at 8. The Forest Service denied the allegation that "fire retardant is a pollutant" because fire retardant itself—in its original packaging, or in an airplane prior to spraying, or when discharged to land to fight wildfires—is not a pollutant under the Clean Water Act. *See Nat'l Cotton Council of Am. v. EPA*, 553 F.3d 927, 936-37 (6th Cir. 2009) (holding that aerially discharged pesticides are pollutants only when they are "wastes of the pesticide application" due to excess or residual discharges to waters). The Forest Service acknowledged that fire retardant discharged to waters regulated under the Clean Water Act is a pollutant.

3

Court granted the request for a finding of liability and denied the request for an injunction.  Doc. 45 at 14-15.

## III.   ARGUMENT

### A.   FSEEE's Motion for Fees May Be Premature.

FSEEE seeks an award of fees and costs under the Clean Water Act's citizen suit provision, 33 U.S.C. § 1365(d).  Under this provision, a "court, *in issuing any final order* in any action brought pursuant to this section, may award costs of litigation" to any prevailing or substantially prevailing party.  *Id.* (emphasis added).  Here, the Court issued an order granting in part and denying in part FSEEE's motion for summary judgment.  Unless the Court considers its May 26, 2023, Order to be a "final order," FSEEE's motion for fees and costs is premature.[2]

### B.   The Most Critical Factor in Determining the Reasonableness of FSEEE's Fee Request is the Degree of Success Obtained.

A party seeking fees under the Clean Water Act's citizen suit provision must show they are a prevailing or substantially prevailing party.  *Saint John's Organic Farm v. Gem Cnty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1058 (9th Cir. 2009).  One of the three elements to qualify as a prevailing party is showing that the plaintiff received some relief on the merits of their claim.  *Saint John*, 574 F.3d

---

[2]     FSEEE also cites to the timing provisions of Fed. R. Civ. P. 54(d)(2) in support of its motion.  Doc. 47 at 1-2.  Rule 54 applies to the filing of a claim for attorneys' fees after the entry of judgment.  Fed. R. Civ. P. 54(d)(2)(B)(i).  The Court has not entered a judgment.

at 1059.  The relief can be nominal.  *Id.*  The Forest Service does not dispute that the declaratory relief makes FSEEE a prevailing party, but the declaratory order at the time issued by the Court has no effect on the Forest Service's conduct.

FSEEE may be a prevailing party, but the nature and quality of the relief awarded affect the reasonableness and amount of its fees.  *Saint John*, 574 F.3d at 1059 (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).  The "'most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'"  *Resurrection Bay Conservation All. v. City of Seward*, 640 F.3d 1087, 1095 (9th Cir. 2011) (quoting *Farrar*, 506 U.S. at 113).  "Where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained."  *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983).

If a plaintiff achieves only limited success, then use of the lodestar—the product of hours reasonably expended multiplied by a reasonable hourly rate— does not end the inquiry.  *Hensley*, 461 U.S. at 434; *see N.M. Citizens for Clean Air & Water v. Espanola Mercantile Co., Inc.*, 72 F.3d 830, 834 (10th Cir. 1996). A district court must make a qualitative assessment as to what extent a plaintiff's limited success should affect a reduction in the lodestar.  *Hensley*, 461 U.S. at 436; *New Mexico Citizens*, 72 F.3d at 834; *see Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 957 (9th Cir. 2002) (affirming fee reduction

of 30% due to plaintiff's limited success). This Court must make that qualitative assessment.

### C.  FSEEE Obtained Limited Success, So the Court Should Reduce FSEEE's Fee Request by 60 Percent.

This Court's May 26, 2023, Order determined that the Forest Service's unpermitted aerial discharges of fire retardant into navigable waters in ten western states violates in the Clean Water Act.  Doc. 45 at 14-15.  It further ordered that the Forest Service is *not* enjoined from using the aerial deployment of fire retardant as a tool to fight wildfires.  *Id.* at 15.  Neither order prompted the Forest Service to alter its behavior for FSEEE's benefit.

The focus of FSEEE's case was to obtain injunctive relief that would require the Forest Service to comply with the Clean Water Act.  FSEEE was completely unsuccessful in its effort.  FSEEE requested injunctive relief to compel the Forest Service to comply with applicable environmental statutes, prevent irreparable harm, and satisfy the public interest.  It sought an injunction to enjoin aerial application of retardants into navigable waters nationwide unless and until the Forest Service has a legal NPDES permit to do so.  Doc. 7 at 9.  This Court denied the requested injunctive relief and did not issue any other injunctive relief.  Doc. 45 at 15.

Although FSEEE obtained a declaratory order of liability, this Order does not alter the Forest Service's behavior.  Prior to the Court's order, the Forest

Service had already acknowledged its obligation to obtain Clean Water Act permits for the aerial discharge of fire retardant to waters of the United States.  On February 16, 2023, the Forest Service and EPA entered into a Federal Facility Compliance Agreement.  Doc. 12-3, Attachment C-1.  The purpose of this Compliance Agreement is to address the Forest Service's discharge of pollutants during aerial fire retardant applications and to require the Forest Service to obtain Clean Water Act permit coverage for discharges to waters.  *Id.*, Attachment C-1 at page 8 of 22.  The Forest Service agreed to take the necessary steps to seek coverage for, and comply with, Clean Water Act permits to address discharges of its aerial fire retardant applications.  *Id.* Attachment C-1 at page 12 of 22.  Thus, the Forest Service had altered its behavior before FSEEE obtained the declaratory relief.  *See Saint John*, 574 F.3d at 1059 (a prevailing party must obtain relief that requires the defendant to do something the defendant would otherwise not be required to do).

FSEEE might argue that the initiation of this litigation prompted the Forest Service to recognize its obligation to obtain NPDES permits for the aerially discharge of fire retardant, but such a "catalyst" theory does not provide a basis for an award of fees.  The Supreme Court, in *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001), held that the catalyst theory is not available in the case of statutes that provide for fees to a

"prevailing party."  The Clean Water Act citizen suit provision is such a "prevailing party" fee-shifting provision.  33 U.S.C. § 1365(d).

The Ninth Circuit applied *Buckhannon* to hold that a catalyst theory could not be used to obtain fees under the fee-shifting provision of a federal environmental statute.  *Kasza v. Whitman*, 325 F.3d 1178, 1180 (9th Cir. 2003).  In *Kasza*, the Ninth Circuit addressed the fee-shifting provision in the Resource Conservation and Recovery Act citizen suit provision, which has essentially the same "prevailing party" language as the Clean Water Act provision on which FSEEE relies in this case.  *Compare* 42 U.S.C. § 6972(e) with 33 U.S.C. § 1365(d).  The Ninth Circuit held that the plaintiff in *Kasza* did not qualify for attorneys' fees under a catalyst theory.  *Kasza*, 325 F.3d at 1180.

The District Court in Idaho confirmed that the holding in *Kasza* precluded the use of the catalyst theory under the Clean Water Act's citizens' suit fee-shifting provision.  *Idaho Power Co. v. EPA*, No. 1:18-cv-00255-BLW, 2020 WL 6449166, at *1 (D. Idaho Nov. 3, 2020).  The district court, in addressing the plaintiff Idaho Power's fee request, recognized that the fee-shifting provision of the Resource Conservation and Recovery Act is "basically identical to the Clean Water Act."  *Id.* As a result, based on *Kasza*, the district held that Idaho Power could not recover attorneys' fees under a catalyst theory.  FSEEE similarly cannot do so.

A qualitative assessment of FSEEE's claim should result in a fee award of no more than 40 percent of its claim due to its limited success on the merits. FSEEE established it had standing to assert this claim to challenge the aerial discharge of fire retardant in 10 western states. It obtained declaratory relief, but the litigation effort to obtain this relief did not require significant time because the Forest Service admitted liability in its Answer. The declaratory judgment FSEEE received will not alter the Forest Service's conduct because it had already entered into the Federal Facility Compliance Agreement. Unlike *Resurrection Bay*, the Court did not require the Forest Service to initiate a Clean Water Act permitting process. *See Resurrection Bay*, 640 F.3d at 1093-94. The Court denied injunctive relief, which was the primary disputed issue between the parties and on which significant attorney hours were spent. In these circumstances, a fee award of over $80,000 is excessive.

### D.     The Court Should Reduce the Hourly Rate Sought by Mr. Bechtold.

This Court has awarded fees to Mr. Bechtold at least twice in the past five years. In both cases, the Court declined to accept Mr. Bechtold's proposed increases in annual hourly rates and held that the practice of this Court is to award a $10 per hour per year increase. *Native Ecosystems Council, v. Krueger*, No. CV 12-27-M-DLC, 2019 WL 1489839, at *3-5 (D. Mont. Apr. 4, 2019); *All. for the Wild Rockies v. Savage*, No. CV 15-M-DLC, 2019 WL 3293425 at *6-*7 (D.

9

Mont. July 22, 2019). This Court applied the same $10 per year annual increase to other experienced environmental practitioners. *Crow Indian Tribe v. United States*, No. CV 17-89-M-DLC, 2021 WL 3142155, at *11 (D. Mont. July 26, 2021). It should apply the same $10 annual increase here.

Mr. Bechtold seeks annual increases for each year from 2020 through 2023 of $20, $20, $30, and $40, respectively. He bases this increase on cost-of-living adjustment figures for the prior year. But the cost-of-living increase in 2019 was 1.6%, and in 2020 it was 1.3%. Soc. Sec. Admin., *Cost-Of-Living Adjustments*, https://www.ssa.gov/oact/cola/colaseries.html. These are both lower than the 2.8% cost of living adjustment in 2018 that the Court considered when setting a $10 annual increase in 2019. *Savage*, 2019 WL 3293425, at *7. Although the cost-of-living adjustment in 2021 and 2022 was higher, this Court's precedent establishes that an annual increase of $10 is appropriate. *All. for the Wild Rockies* at *7.

In summary:

| Year | Rate ($10 annual increase) | Hours (40%) | Fee |
|------|---------------------------|-------------|-----|
| 2022 | $380 | 13.32 | $5,061.60 |
| 2023 | $390 | 58.04 | $22,635.60 |
| Total Fees | | | $27,697.20 |
| Total Costs | | | $572.45 |
| Total Fees and Costs | | | $28,269.65 |

## IV.   CONCLUSION

For the reasons above, if the Court awards fees at this time, the Court should allow an award of not more than $28,269.65 as reasonable fees and costs incurred to obtain the relief received.

DATED this 12th day of June 2023.

TODD KIM
Assistant Attorney General

s/ Alan D. Greenberg
ALAN D. GREENBERG
Environmental Defense Section
United States Department of Justice
999 18th Street, Suite 370
Denver, Colorado 80202
Phone: (303) 844-1366
Email: alan.greenberg@usdoj.gov

JESSE A. LASLOVICH
United States Attorney

/s/ John M. Newman
Assistant U.S. Attorney
Attorney for United States

## CERTIFICATE OF COMPLIANCE WITH
## WORD LIMITS

This brief complies with the type-volume limitation of Local Rule 7.1(d)(2)

because this brief contains 2,469 words in a proportionally spaced font style,

excluding caption, certificate of compliance, table of contents and authorities,

signature block, and any certificate of service.  Microsoft Word for Microsoft 365

MSO (Version 2211 Build 16.0.15831.20220) 32-bit version computed the word

count.



_s/ Alan D. Greenberg_
Alan D. Greenberg
Attorney for Respondents United States
Environmental Protection Agency and Michael
Regan

Dated:  June 12, 2023

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2023, I filed the foregoing Defendant's Response to Plaintiff's Motion for Fees and Costs using the CM/ECF system, which will send notification of such filing to counsel of record:

                                        */s/ Alan D. Greenberg*
                                        ALAN D. GREENBERG